

FILED

July 27, 2017

TN COURT OF WORKERS' COMPENSATION CLAIMS

Time 3:25 PM

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT JACKSON

| | | |
|---|---|---|
| SHAMEEKA KELLY, | ) | Docket No. 2016-07-0889 |
| Employee, | ) | |
| v. | ) | |
| REGENCY RETIREMENT VILLAGE, | ) | State File No. 57742-2015 |
| Employer, | ) | |
| And, | ) | |
| OCCUSURE, | ) | Judge Allen Phillips |
| Insurance Carrier. | ) | |

## EXPEDITED HEARING ORDER DENYING MEDICAL AND TEMPORARY DISABILITY BENEFITS

This case came before the undersigned Workers' Compensation Judge on July 6, 2017, upon Shameeka Kelly's Request for Expedited Hearing. Ms. Kelly requested medical and temporary disability benefits for an alleged injury occurring on July 26, 2016. Regency contended that the medical evidence failed to establish Ms. Kelly's injury arose out of her employment, and further contended that she was not entitled to temporary benefits because she failed to accept a light duty position. Accordingly, the legal issues are whether Ms. Kelly came forward with sufficient evidence to establish her injury arose out of her employment at Regency and whether she refused a valid light-duty offer. The Court holds Ms. Kelly likely would not prevail at a hearing on the merits in proving that her injury arose out of the employment, and this finding disposes of both requests.

### History of Claim

Ms. Kelly worked for Regency, an assisted living facility, as a licensed practical nurse. On July 26, 2015, she helped evacuate non-ambulatory residents after a fire alarm sounded and claimed resulting injury to her left shoulder, low back, and neck. Regency provided medical benefits.

1

On July 27, Ms. Kelly reported low back and left shoulder pain to Nurse Practitioner (NP) Jayme Walker at Family Walk-In Clinic. NP Walker diagnosed lumbago and left shoulder pain, and restricted Ms. Kelly's work activities. Afterward, Regency initiated temporary disability benefits, which continued until September 22 when Regency discontinued payments after a meeting between its management and Ms. Kelly. The parties disputed the events of the meeting.

Jennie Spragins, Regency's administrator, claimed that Regency offered a light-duty position. The job was for "day shift," which meant other Regency employees would be available to help Ms. Kelly. Ms. Spragins testified she contemplated the position would require Ms. Kelly to handle fewer than ten pounds, Regency's interpretation of "light duty." Ms. Spragins specifically noted that Ms. Kelly would not have to push a medication cart weighing more than ten pounds. However, Ms. Spragins admitted she was unaware of what Regency employees specifically told Ms. Kelly because she did not attend the meeting. For her part, Ms. Kelly claimed Regency made no specific offer of light-duty employment at the meeting.

Ms. Terry Barger, a former Regency employee, attended the meeting and testified that Regency offered Ms. Kelly light-duty work consistent with Ms. Spragins' testimony but, Ms. Kelly declined. However, Ms. Barger also testified that the light-duty position might involve handling more than ten pounds, and she could not confirm Regency told Ms. Kelly that she would not have to push the medication cart.

The next contact between the parties occurred on October 1, when Ms. Spragins phoned Ms. Kelly in the late afternoon to ask if she would cover a night shift. Again, Ms. Spragins testified that the position would not require Ms. Kelly to push the medication cart. She noted that if the night's activities proceeded as normal, then Ms. Kelly would not have handled more than ten pounds. However, on cross-examination, she conceded that Ms. Kelly might have been the only nurse present in an emergency and consequently might be required to provide patient care such as emergency CPR.

For her part, Ms. Kelly agreed that Regency offered her a night shift job on October 1, and she was told it required no pushing of the cart. However, she questioned the legitimacy of the offer and noted it came with just one-hour of notice. Because of scheduling conflicts, she declined.

The parties agreed Regency never contacted Ms. Kelly about returning to work after October 1. Ms. Spragins explained that she did not contact "PRN" nurses to work after they "declined several times."

Ms. Kelly went to Family Walk-In Clinic on December 2. The treating NP recommended physical therapy for the low back and totally restricted her from work for

two weeks. Thus, Regency resumed temporary disability payments from December 2 through the 16th.

Ms. Kelly returned to Family Walk-In on January 8, 2016, complaining of continuing low back and left shoulder pain. The NP noted Ms. Kelly had two "rounds" of physical therapy for her back, with which Ms. Kelly was "non-compliant." Thus, the NP felt there was "no indication . . . for advanced imaging" of her low back, and she placed Ms. Kelly at maximum medical improvement (MMI) for the low back injury. However, the NP referred Ms. Kelly for an orthopedic evaluation of the left shoulder.

Regency complied with the referral, and Ms. Kelly saw Dr. Jason Hutchison, an orthopedist, on February 8. He recorded that Ms. Kelly "began having left shoulder pain starting on 7/26/15." He listed no other body parts in his history and noted that all body "systems" were either "negative or non-contributory." As for the shoulder, Dr. Hutchison believed her complaints were "myofascial" in nature. He noted Ms. Kelly received "consistent treatment since July" but, because he did not "have full records available," he would reassess causation upon receipt of more records. He restricted Ms. Kelly from "over [the] shoulder work."

On March 10, Dr. Hutchison repeated his diagnosis of myofascial shoulder pain. He declined Ms. Kelly's request for a "narcotics" prescription but instead recommended she see her primary care physician (PCP) for what he called "depressive symptoms." He placed her at MMI for her left shoulder injury and assigned no permanent impairment.

Ms. Kelly followed his advice and saw her PCP, Dr. Earl Stewart. He recommended MRIs of her neck and low back. As pertinent here, the cervical MRI revealed a herniated disc at the C6-7 level.

Ms. Kelly then returned to Dr. Hutchison on May 13. He referred her to a "spine specialist" to address causation of the herniated cervical disc, but had nothing further to offer for the left shoulder injury.

At that point, Ms. Kelly claims her relationship with Regency deteriorated because of counsel's involvement. Specifically, Regency assembled various medical records purporting to show Ms. Kelly had pre-existing back and neck issues. These records revealed motor vehicle accidents (MVAs) and prior MRIs of both her neck and low back. The records documented an MVA in 2014 and another just one month before her alleged injury at Regency. A record from Dr. Stewart purportedly stated she had cervical spine issues for several years.

Ms. Kelly countered that she never had serious issues because of the prior accidents, and further contended that she truthfully answered all of Dr. Hutchison's

3

questions regarding her past history. She argued that Regency conveyed an inaccurate and exaggerated portrayal of her past medical treatment in order to deny her claim.

Indeed, Regency provided Ms. Kelly's prior records to Dr. Hutchison and then asked him, in light of those records, several questions regarding his causation opinions for her neck and back. According to Dr. Hutchison, he reviewed "approximately 50 pages of medical records which include[d] multiple dates" of her past treatment. He said that the records "reflect[ed] a significant disconnect between the history obtained from [Ms. Kelly] . . . and what [was] reflected in [the prior] records." After seeing Ms. Kelly's history, Dr. Hutchison could not primarily relate her neck or back injuries to her work at Regency. Thus, Regency denied Ms. Kelly's claim for further evaluation of her neck.

Later, Ms. Kelly returned to Dr. Hutchison to, as described by Dr. Hutchison, "get [him] to say this was work related to try and get it covered back under workers' compensation." He declined, given the prior history he recently reviewed and told her to see "her spine provider of choice." There is no record of Ms. Kelly ever seeing a spine specialist regarding her neck.

Ms. Kelly did, however, testify a surgeon told her she did not need low back surgery. She also had NP Walker complete a C-32 Form that indicated her injuries were work-related.

Ms. Kelly filed a Petition for Benefit Determination (PBD) seeking several remedies.[1] At the hearing, she requested that Regency honor Dr. Hutchison's referral to a spine specialist and provide further evaluation of her low back and "mental health." She also requested temporary disability benefits from September 22, 2015, the date Regency terminated them after its first purported light-duty offer, through December 2, 2015, when Regency resumed benefits for two weeks after Family Walk-In Clinic took her completely off work. She also requested benefits from December 16 until March 10, 2016, when Dr. Hutchison placed her at MMI for her shoulder.

For its part, Regency contended Ms. Kelly was not entitled to further benefits because Dr. Hutchison could not primarily relate her current problems to the work at Regency.

---

[1] In her PBD, Ms. Kelly requested 1) various medical evaluations, 2) temporary disability benefits, 3) for "work to resume with employer" and 4) "any recommendation by court that would be positive for adaptation of life changes/effects." At an Expedited Hearing, the Court might only award medical and temporary disability benefits; accordingly, Ms. Kelly's other requests are beyond the Court's authority and it will not address them. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2016).

## Findings of Fact and Conclusions of Law

*Standard applied*

Ms. Kelly must come forward with sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1)(2016).

*Medical benefits*

Ms. Kelly must prove her alleged injury arose primarily out of and in the course and scope of her employment at Regency. To do so, she must show, "to a reasonable degree of medical certainty that [her alleged work injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, her injury was more likely than not caused by the incident when considering all causes as opposed to speculation or possibility. *See* Tenn. Code Ann. § 50-6-102(14) (2016).

Here, the medical causation opinions are from NP Walker and Dr. Hutchison. Because a nurse "is not an expert who can testify as to medical causation," the only valid causation opinions are those of Dr. Hutchison. *See Dorsey v. Amazon.com, Inc.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 13, at *9 (May 14, 2015).

The Court first looks to the questionnaire that Dr. Hutchison completed at Regency's request. He stated he was unaware of the extent of Ms. Kelly's pre-existing problems, and when considering those in light of her history and objective findings, he could not provide a favorable causation opinion. Ms. Kelly disputed these opinions, arguing that Dr. Hutchison formulated them based upon inaccurate facts presented by Regency.

The Court duly considered Ms. Kelly's position. However, it notes Dr. Hutchison stated on February 23, 2017, that he reviewed "50 pages of medical records which include multiple dates of treatment [in] Ms. Kelly's history." Further, Dr. Hutchison stated those notes reveal a "significant disconnect" between Ms. Kelly's history to him and her past medical issues. The Court reviewed Ms. Kelly's prior medical records. It has also considered her position that she was forthcoming in answering the questions at Dr. Hutchison's office. However, neither this Court nor Ms. Kelly has the ability to "independently assess an injured worker's symptoms as described in the medical records." *Morgan v. Macy's*, TN Wrk. Comp. App. Bd. LEXIS 39, at *14 (Aug. 31, 2016). Instead, the Court can only consider the opinions contained in "evidence properly admitted into the record" *Scott,* at *8. Hence, the Court is constrained to accept Dr. Hutchison's opinions in the absence of any expert proof to the contrary. *See also Berdnik*

*v. Fairfield Glade Comm. Club*, 2017 TN Wrk. Comp. App. Bd. LEXIS 32 (May 18, 2017)(absent countervailing medical proof, undisputed medical evidence that an injury did not arise primarily out of the employment prevents an award of benefits).

Accordingly, at this stage of the proceedings, the Court holds Ms. Kelly did not come forward with sufficient evidence that she would likely prevail at a hearing on the merits on the issue of whether her injury arose primarily out of her employment, and it must deny her claim for further medical benefits.

*Temporary Disability Benefits*

To establish entitlement to temporary benefits, Ms. Kelly must show she (1) became disabled from working due to a compensable injury, (2) *a causal connection between the injury and her inability to work*, and (3) the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015)(Emphasis added). Because Ms. Kelly did not present proof that her injury arose primarily out of her employment at Regency, the Court denies her request for temporary benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. The Court denies Ms. Kelly's request for further medical or temporary benefits at this time.

2. This matter is set for a Scheduling (Status) Hearing on **Thursday, October 26, 2017, at 11:00 a.m. Central time. You must call 731-422-5263 or toll-free 855-543-5038 to participate in the Hearing.**

**ENTERED this the 27ᵗʰ day of July, 2017.**

**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

6

# APPENDIX

Exhibits:

1. C-32 Form of Jayme Walker, NPC
2. Lumbar Spine MRI, November 7, 2014
3. Lumbar Spine MRI, April 15, 2016
4. Cervical Spine MRI, April 15, 2016
5. Left Shoulder MRI, February 14, 2017
6. First Report of Work Injury
7. Medical Records of Family Care Walk-in Clinic
8. Amended Employer's Notice of Filing Medical Records
9. E-mail communication from Nurse Case Manager
10. Medical Record of Dr. Jason T. Hutchison, February 23, 2017
11. Wage Statement

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Response to Request For Expedited Hearing
5. Order Denying File Review Expedited Hearing
6. Employee's Motion to Dismiss Medical Records
7. Employer's Response to Motion to Dismiss Medical Records
8. Employer's Motion in Limine
9. Order Denying Motion to Exclude Medical Records and Motion in Limine
10. Employer's Witness and Exhibit List
11. Amended Employer's Witness and Exhibit List
12. Order on Filing of Medical Records for Expedited Hearing

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 27th day of July, 2017.

| Name | First Class Mail | Via Email | Service Sent To: |
|------|------------------|-----------|------------------|
| Shameeka Kelly, Self-represented Employee | X | X | 124 Chester Levee Rd., Jackson, TN 38301 Shameeka13@yahoo.com |
| Connor Sestak, Esq., B. Duane Willis, Esq., Attorneys for Employer | | X | csestak@morganakins.com dwillis@morganakins.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov